UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEAN MANUTTI, *individually and derivatively on behalf of* FOX GLASS OF NEW JERSEY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE ESTATE OF RICHARD KOHLER *by and through its Personal Representative*, *et al.*,<br><br>Defendants. | Civ. No. 24-5806 (GC)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court is plaintiff/counterclaim defendant Dean Manutti's motion for leave to file an amended complaint. [Dkt. 105.] Defendants/counterclaim plaintiffs, the Estate of Richard Kohler, Tina Kohler, and Fox Glass Co., Inc. d/b/a Fox Glass of Florida ("Fox Glass FL") (collectively, "defendants"), oppose the motion to the extent that Manutti seeks to add new causes of action for discrimination, retaliation, and wrongful termination. [Dkt. 110.] The Court has carefully considered the parties' submissions and applicable law. For the reasons set forth below, the Court grants Manutti's motion in part and denies it in part. Specifically, the Court grants the motion to the extent that it seeks to amend Manutti's existing claims, but denies the motion to the extent that it seeks to add new claims for discrimination, retaliation, and wrongful termination.

## I. BACKGROUND

On May 2, 2024, Manutti initiated this action, both individually and derivatively on behalf of Fox Glass of New Jersey ("Fox Glass NJ"), against Fox Glass FL, Richard Kohler, and Tina Kohler. [Dkt. 1.][1] In the original (and presently operative) complaint, Manutti alleges that defendants breached a distribution agreement governing the allocation of work orders to various Fox Glass companies, engaged in shareholder oppression, and breached fiduciary duties by redirecting opportunities and work orders that should have gone to Fox Glass NJ to other entities in which Richard held a larger stake, including Fox Glass FL. *Id.* ¶¶ 1, 28-63. Manutti asserted the following causes of action: (1) breach of contract against Richard and Fox Glass FL for their alleged violation of the distribution agreement (Count I); (2) shareholder oppression against Richard and Fox Glass FL (Count II); (3) breach of fiduciary duty against Richard and Fox Glass FL (Count III); (4) tortious interference against Tina for her alleged interference with the distribution agreement (Count IV); and (5) aiding and abetting breach of a fiduciary duty against all defendants (Count V). *Id.* ¶¶ 64-98.

On May 17, 2024, Richard filed an answer to the complaint. [Dkt. 7] at 2-12. Richard also asserted several counterclaims against Manutti (on behalf of himself and Fox Glass NJ) and filed an application for temporary and preliminary injunctive relief in an effort to "prevent" Manutti "from betraying his fiduciary and

---

[1] For clarity only, this Memorandum Order hereafter refers to Richard Kohler and Tina Kohler by their first names. No disrespect is intended.

other legal obligations by, among other things, misappropriating and diverting confidential internal information from Fox Glass NJ to a competing company." [Dkt. 7] at 13-37; [Dkt. 7-2]. The counterclaims allege, *inter alia*, that Manutti surreptitiously launched and assisted a competing company using Fox Glass NJ's confidential information, attempted to poach Fox Glass employees to work for the competing company, misappropriated corporate assets, and denied Richard access to the Fox Glass NJ bank account and its financial documents, all of which ultimately resulted in his termination from Fox Glass NJ. [Dkt. 7] at 19-28.

Richard and Fox Glass NJ assert the following counterclaims against Manutti: (1) breach of his fiduciary duties to Fox Glass NJ and Richard; (2) breach of the implied covenant of good faith and fair dealing with respect to the Fox Glass NJ Shareholder Agreement; (3) tortious interference with Fox Glass NJ's relationships with its employees, vendors, and customers; (4) misappropriation of Fox Glass NJ's trade secrets and proprietary business information; (5) violation of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 et seq.; (6) unfair competition with Fox Glass NJ; (7) unjust enrichment; (8) usurpation of corporate opportunities from Fox Glass NJ; and (9) injunctive relief. [Dkt. 7] at 28-35. The same day that defendants filed the foregoing materials, they removed Manutti as a director of Fox Glass NJ, fired him from his position as President of Fox Glass NJ, and directed him to return all corporate assets. [Dkt. 105-1] at 6; [Dkt. 110] at 11.

On June 10, 2024, the Court entered a consent order temporarily restraining Manutti from using Fox Glass NJ's trade secrets and confidential and/or

proprietary information except as permitted by law or in connection with this litigation, and requiring Manutti to "turn over to his counsel any trade secret, confidential and/or proprietary information of [Fox Glass NJ] in his possession, custody or control." [Dkt. 32.] Thereafter, on June 28, 2024, the Court directed the parties to begin limited discovery in aid of the request for preliminary injunctive relief. [Dkt. 38.] Plenary discovery followed, and on March 31, 2025, the parties reported that "there were no outstanding written discovery disputes" and that "no further written discovery [was] being sought." [Dkt. 74] at 1. Accordingly, the "parties agreed to finalize the scheduling of the party depositions." *Id.*

Before the parties began those depositions, however, defense counsel notified the Court that Richard had died. [Dkt. 77.] In light of his passing, defendants requested a 30-day stay of all proceedings "to allow [Tina] and Fox Glass [FL] to attend to the numerous personal, family, and business-related arrangements relating to [Richard]'s passing" and "to address the implications on the business [and] the claims[,] and to coordinate with the fiduciaries once they [we]re appointed." *Id.* On April 9, 2025, the Court granted the stay request. [Dkt. 78.] Ensuing delays with the administration of Richard's estate led the Court to extend the stay, and the Court ultimately reopened the case in an order entered on October 17, 2025. [Dkt. 87] at 1. At the same time, the Court also directed the parties to file "an appropriate consent order substituting the Estate of Richard Kohler in place of defendant Richard Kohler" and for defendants to provide Manutti

with a "proposed amended answer and/or counterclaim(s)" given Richard's passing. *Id.*

On October 31, 2025, the Court entered a consent order substituting the Estate of Richard Kohler as a defendant in Richard's place, and on November 21, 2025, the parties advised the Court that Manutti consented to defendants' proposed amended answer and counterclaims. [Dkts. 89, 91.] The Court entered a consent order granting defendants leave to file an amended answer and counterclaims, which they did on November 25, 2025. [Dkts. 92, 93.] In addition to the nine causes of action included in the original counterclaims, the amended counterclaims also alleged causes of action for (1) common law fraud based on Manutti's alleged misrepresentations about Fox Glass NJ's lease with and rent payments to Ocean Port Enterprise, Inc., the owner of the building in which Fox Glass NJ operated; (2) breach of contract based on Manutti's alleged violation of the Fox Glass NJ Shareholder Agreement; (3) declaratory judgment regarding the parties' rights and legal relationships with respect to the Fox Glass NJ Shareholder Agreement; (4) specific performance with respect to Manutti's buyout obligations pursuant to the Fox Glass NJ Shareholder Agreement; and (5) fraudulent concealment based on Manutti's alleged spoliation of emails relevant to this action. [Dkt. 93] at 39-44.

Before responding to the amended counterclaims, Manutti reported that he would be changing counsel. [Dkt. 95.] On December 17, 2025, the Court held a telephone status conference to address the status of the case and discuss next steps

given Manutti's anticipated substitution of counsel. *See* [Dkt. 96.] On January 8, 2026, new counsel entered his appearance on Manutti's behalf. [Dkt. 97.] The same day, Manutti's new counsel filed a letter indicating, among other things, that he was "contemplating seeking leave [to] fil[e] [ ] a motion to amend the [c]omplaint to add new causes of action as a result of [his] consultation with [ ] Manutti and a review of the amended counterclaims." [Dkt. 98] at 2. In response to the letter, the Court directed the parties to meet and confer regarding whether defendants would consent to Manutti's proposed amendments to the complaint. [Dkt. 99] at 1. Defendants did not consent, however, and Manutti filed the motion for leave to amend now before the Court. [Dkt. 105.][2]

In his motion, Manutti seeks to add the following claims to his complaint: (1) age discrimination, in violation of the New Jersey Law Against ("NJLAD") (Count VI); (2) discrimination on the basis of race, ethnicity, and national origin, in violation of the NJLAD (Count VII); (3) unlawful retaliation, in violation of the NJLAD (Count VIII); and (4) wrongful termination pursuant to *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58 (1980) (Count IX). [Dkt. 105-2] ¶¶ 73-130, 191-214. Additionally, Manutti proposes to name Tina as a defendant in the existing claims for breach of contract (Count I) and shareholder oppression (Count II), and to clarify, update, and modify certain facts pleaded in support of his previously

---

[2] Upon the Court's review of the docket, it appears that Manutti has yet to file a responsive pleading to the amended counterclaims. This Order includes a deadline for him to do so.

asserted claims. *Id.* at 2-13; 19-26. The proposed amended complaint also formally substitutes the Estate of Richard Kohler in place of Richard throughout.[3] *See generally id.* Defendants oppose the motion to the extent that Manutti seeks to add new causes of action for discrimination, retaliation, and wrongful termination, arguing that it should be denied on grounds of undue delay, undue prejudice, futility, and bad faith or dilatory motive. [Dkt. 110.][4]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal standard reflects a preference "that claims will be decided on the merits rather than on technicalities." *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 419 (D.N.J. 2005) (citations omitted). Accordingly, the Court may deny a motion to amend only where there is (i) undue delay; (ii) undue prejudice; (iii) bad faith or dilatory motive; (iv) repeated failures to cure deficiencies; or (v) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted." (citation omitted)).

---

[3] As previously noted, the Court already entered a consent order substituting the Estate of Richard Kohler as a named defendant. [Dkt. 89.]

[4] In a letter submitted via email to chambers on September 11, 2026, defense counsel advised the Court that defendants do not object to the inclusion of Tina as a defendant in the existing claims.

Ultimately, whether to permit amendment under Rule 15 is a decision left to the Court's sound discretion. *Fraser v. Nationwise Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

Because defendants argue that Manutti's motion should be denied for undue delay, as unduly prejudicial, for bad faith or dilatory motive, and/or as futile, the Court summarizes the relevant standards below.

**A. Undue Delay**

Mere delay or the passage of time "is an insufficient ground to deny leave to amend." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Indeed, a court "has discretion to deny the request only if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984)); *see also Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) ("at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." (cleaned up) (quoting *Cureton*, 252 F.3d at 272-73)). "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires [the Court to] focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273 (citing *Adams*, 739 F.2d at 864, 868) (cleaned up). The Court then must balance

those stated reasons against "the imposition or prejudice caused by the delay." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988).

### B. Undue Prejudice

"In determining whether amendment of a pleading will cause undue prejudice, the Court must 'focus on the hardship to the [non-moving party] if the amendment were permitted.'" *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 383 (D.N.J. 2023) (quoting *Cureton*, 25 F.3d at 273) (alteration in original); *see also Geness v. Cox*, 902 F.3d 344, 365 n.16 (3d Cir. 2018) (explaining that "[t]he prejudice inquiry considers the effect of amendment on the existing defendants in the case." (citations omitted)). "Prejudice becomes 'undue' when the opponent shows it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered[.]" *Conrad*, 681 F. Supp. 3d at 383 (cleaned up). Courts also "consider[ ] whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273; *see also Long*, 393 F.3d at 400 (an amendment is unduly prejudicial if it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [non-moving party] from bringing a timely action in another jurisdiction.").

### C. Bad Faith or Dilatory Motive

Like the analysis for undue delay, "[t]o determine bad faith, the Court must consider [a] plaintiff's motives for not amending sooner." *Givaudan Fragrances*

*Corp. v. Krivda,* Civ. No. 08-4409 (ES), 2010 WL 1644070, at *2 (D.N.J. Apr. 22, 2010) (citing *Adams*, 739 F.2d at 868). "Although delay itself can be evidence of bad faith justifying the denial of a motion to amend, there generally must also be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground." *Diallo v. Alo Enters. Corp.*, Civ. No. 12-3762 (TJB), 2013 WL 3772827, at *3 (D.N.J. July 17, 2013) (citing *Adams*, 739 F.2d at 868). Thus, "[s]imply failing to add a claim a party had prior knowledge of does not alone amount to bad faith." *Id.* (citation omitted).

**D. Futility**

Amendment of a pleading is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (citation omitted). Consequently, where a proposed amendment is opposed on futility grounds, the Court applies "the same standard of legal sufficiency [that] applies under Rule 12(b)(6)" motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the proposed amended pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). Merely

providing facts "consistent with" a defendant's liability "stops short of the line between possibility and plausibility" and will not survive a Rule 12(b)(6) motion. *Id.* (quoting *Twombly,* 555 U.S. at 557).

That said, while Rule 15 futility tracks Rule 12(b)(6), it does not contemplate full-blown Rule 12 motion practice on the merits of the proposed new claims: "If a proposed amendment is not clearly futile, then denial of leave to amend is improper. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (citations omitted). Rather, the proposed amended pleading must "appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Id.* Effectively, this means that the proposed amendment must not be "frivolous or advance[ ] a claim or defense that is legally insufficient on its face." *Id.* (quotation omitted).

## III. DISCUSSION

The Court addresses Manutti's proposed amendments in turn.

### A. Proposed Amendments to Existing Claims

Manutti proposes to add Tina as a defendant in his existing claims for breach of contract and shareholder oppression and to amend certain facts pleaded in support of his existing claims. [Dkt. 105-2] at 2-13; 19-26. Defendants do not object to these proposed amendments, and the Court does not see any reason to disallow them. Accordingly, the Court will permit all of Manutti's proposed amendments to his existing claims. *See Elizabeth City Bd. of Educ. v. M.G. on behalf of E.K.*, Civ. No. 21-12891 (AME), 2022 WL 9997472, at *4 (D.N.J. Oct. 17, 2022) ("[Plaintiff] did not oppose Defendants' motion [for leave to amend] with respect to their remaining proposed amendments and did not oppose the request to add . . . a party. Thus, the Court finds good cause to permit these amendments.").

### B. Proposed New Claims

As described above, Manutti also proposes to add four new causes of action: (1) age discrimination under the NJLAD; (2) discrimination on the basis of race, ethnicity, and national origin under the NJLAD; (3) retaliation under the NJLAD; and (4) common law wrongful termination under *Pierce*. [Dkt. 105.] For the

following reasons, the Court will deny the motion to add these new claims as the product of undue delay that will unduly prejudice defendants.[5]

To begin, a significant amount of time passed between the events giving rise to the proposed new claims and when Manutti sought leave to amend. While the

---

[5] Because the Court will deny the motion on grounds of undue delay and resulting prejudice, the Court does not conduct an extensive futility analysis. That said, the Court has significant reservations specifically with Manutti's proposed claims for NJLAD retaliation and *Pierce* wrongful termination. Regarding NJLAD retaliation, the complaint lacks specific factual allegations that Manutti ever "opposed any practices or acts forbidden under [the NJLAD]," or otherwise engaged in protected activity before the alleged retaliation. N.J.S.A. 10:5-12(d); *see also Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 547 (2013) (to establish a claim for NJLAD retaliation, a plaintiff must establish that "the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action." (citations omitted)). To the contrary, the proposed amended complaint contains only a general, conclusory allegation that Manutti "complained of and protested against the continuing harassment, discrimination, and retaliatory conduct," and that "[d]efendants had knowledge about those complaints received via email." But neither the pleaded descriptions of emails nor the emails and other materials appended to the complaint contain or otherwise evince any complaints of discrimination. [Dkt. 105-2] ¶ 205; *see also id.* ¶ 46. Regarding the *Pierce* claim, "[a] discharged at-will employee who claims wrongful termination under *Pierce* must identify 'a clear mandate,' that is a clear 'specific expression' of public policy that has been violated by the employer and in response to which the employee had taken the action that has prompted his discharge,"; "[t]he sources of such 'specific expressions' or 'clear mandates' are statutes, regulations and judicial decisions, and may 'in certain instances,' include a professional code of ethics." *Chelly v. Knoll Pharms.*, 295 N.J. Super. 478, 488 (App. Div. 1996). Manutti's proposed amended complaint, however, fails to identify any "clear mandate" or "specific expression" of public policy that defendants allegedly violated. *Bradshaw v. Am. Inst. for Hist. Educ.*, Civ. No. 12-1367 (RBK), 2013 WL 1007219, at *5 (D.N.J. Mar. 13, 2013) (explaining that "in order to state a prima facie *Pierce* claim, a plaintiff must identify the particular public policy implicated in the termination decision"). Separately, the Court rejects defendants' arguments based on bad faith or dilatory motive. Defendants' argument that Manutti seeks to assert the new claims solely to increase his bargaining position or "raise the stakes" of the case, [Dkt. 110] at 44-45, is entirely speculative.

passage of time alone is insufficient to justify denying a party's motion for leave to amend its pleading, *Cureton*, 25 F.3d at 273, "[t]he concept of 'undue delay' includes consideration of whether new information came to light or was available earlier to the moving party." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004). Here, each of the proposed new claims is based on facts that were known or readily available to Manutti when he first filed suit, or that became available shortly thereafter when his employment at Fox Glass NJ was terminated in May 2024—nearly two years before Manutti provided defendants with notice of the proposed amendments. Indeed, the alleged discrimination occurred during his employment with Fox Glass NJ, and the termination providing the basis for his retaliation and *Pierce* claims occurred on May 17, 2024. [Dkt. 105-1] at 6; [Dkt. 110] at 11. Thus, this is not a situation where the information underlying the claims only became available through the discovery process. Moreover, the changes to defendants' amended counterclaims did not materially affect or expand this case, nor can they be said to have prompted discovery of Manutti's proposed new claims.

Nonetheless, Manutti submits that the delay is not "undue" because the "delayed procedural development and age of this lawsuit have not been the result of Manutti's action or inaction[,] but rather the result of the substitution of counsel and the reasonable time required for new counsel to thoroughly review the record and identify and develop the additional viable [NJLAD] and *Pierce* claims." [Dkt. 105] at 10. True enough, new counsel discovered the proposed new claims upon a fresh review of the case. But that neither changes the fact of the delay nor

excuses it. The details of the events giving rise to the proposed claims were equally available to Manutti himself and to Manutti's prior counsel. "[T]he appearance of new counsel does not automatically create good cause to amend." *Vitaworks IP, LLC v. Qianjiang Yongan Pharm. Co.*, Civ. No. 16-5321 (MF), 2018 WL 10152229, at *2 (D.N.J. Nov. 5, 2018). As defendants note in their opposition, this is not a situation where prior counsel lacked expertise regarding the additional claims being asserted. *Cf. Salaam v. Small*, Civ. No. 21-12191 (EAP), 2023 WL 8110869, *2, 5-6 (D.N.J. Nov. 22, 2023) (granting leave to amend to add disability discrimination claims where original counsel specialized in criminal defense and new counsel was "a seasoned employment law attorney" who "recognized that the facts g[a]ve rise to numerous disability discrimination claims which should have been pleaded," "the proposed claims involve the same operative facts," and the motion to amend was filed only four months into discovery). To the contrary, Manutti's prior counsel is a civil litigator with expertise "in resolving commercial disputes of all types[,] including employment matters involving wrongful termination claims." [Dkt. 110-6] at 3.

While it is reasonable for new counsel to take a new or different view or approach to a case, the Court does not think that a party's delay in seeking leave to amend should be excused just because he later retained new counsel who identified new claims that were equally available to prior counsel. The Court still must balance Manutti's reason for not amending sooner against the respective burdens on the Court and the level of prejudice that defendants suffered—or will suffer—if

the amendment is permitted. *Cf. Salaam*, 2023 WL 8110869, at *5; *Vitaworks IP*, 2018 WL 10152229, at *2 (granting leave to amend where new counsel entered an appearance in the case, concluding that "[a]llowing [p]laintiff an opportunity to put before the Court its best pleading ma[de] eminent sense," *and* there was no undue prejudice to defendants because "[d]iscovery ha[d] not started and the case [wa]s in the earliest stages."); *Saiyed v. Archon, Inc.*, Civ. No. 16-9530 (JMV), 2017 WL 4881578, at *2-3 (D.N.J. Oct. 30, 2017) (granting motion to amend where plaintiff recently substituted counsel so the two-year delay in filing the motion was not "caused by any improper motives" *and* defendants would not be prejudiced by the additional discovery needed on the new claims (cleaned up)).[6] In short, while new counsel's diligent efforts to investigate and identify potential new claims were entirely reasonable, the delay that resulted before new counsel's appearance was not, and remains chargeable to Manutti.

In the Court's view, Manutti's delay in seeking leave to amend will result in substantial prejudice to defendants and unduly extend the resolution of the case.

---

[6] In *Saiyed*, the plaintiff originally "allege[d] that [d]efendants refused to pay him minimum wages and engaged in systematic mistreatment of [him]" and "assert[ed] eight causes of action including, *inter alia*, one claim for failure to pay proper wages under the Fair Labor Standards Act, and three claims for failure to pay proper wages under the New York Labor Law." 2017 WL 4881578, at *1. In the subsequent motion to amend, the plaintiff sought leave to file "additional claims for violation of New Jersey's Wage and Hours laws arising out of [d]efendants' alleged failure to pay [p]laintiff wages owed to him." *Id.* The new claims therefore significantly overlapped with the existing claims, so the additional discovery required was minimal. As discussed below, Manutti's proposed new claims in this case, by contrast, present a new case theory and would significantly expand the scope of the pleadings.

In the time that passed between when the alleged facts giving rise to the proposed claims came to light and when Manutti filed his motion to amend, the parties engaged in extensive discovery regarding the existing claims, and Richard—a defendant, counterclaimant, and key witness to the alleged events underlying the proposed new claims—died. Manutti argues that the proposed new claims will require only limited additional discovery and he emphasizes that fact discovery remains open: "No depositions have been taken[;] [n]o expert discovery has occurred[;] [and] [n]o trial date has been set," [Dkt. 111] at 7-9. That much is true, but the Court disagrees that only limited additional discovery will be required. The Court instead agrees with defendants that the addition of Manutti's proposed new claims will require extensive new written discovery, will substantially alter the case that has been litigated to date, and will significantly delay the resolution of this action.

On that score, the parties agree that written discovery on the existing claims has been largely complete for some time. Moreover, the litigation thus far has had nothing to do with alleged discrimination or retaliation, so "[t]he proposed amendment . . . would vastly expand the scope of this case." *Bradley v. Rodriguez*, Civ. No. 15-2603 (SCM), 2018 WL 1087498, at *6 (D.N.J. Feb. 28, 2018). Manutti's contrary assertions notwithstanding, the Court believes that the additional discovery required for the proposed new claims will be a relatively major undertaking and not merely "incidental." [Dkt. 111] at 7-8 (citing *Harrison Beverage Co.*, 133 F.R.D. at 468). Defendants identify a significant amount of

additional discovery needed on Manutti's proposed new claims. Indeed, defendants explain that if the Court permits plaintiffs' proposed new claims, defendants would need to "propound interrogatories, and requests for documents . . . from anyone who worked for the company in order to document whether there were legitimate complaints about harassment or discrimination of employees or discrimination based upon age or ethnicity" and "conduct discovery [on] [Manutti]'s own participation in discriminatory and harassing conduct to support defenses to any claimed injury or damage"; that Manutti's new damages claim based on emotional distress "may require expert and medical testimony and reports" and that "linguistic experts may be required" on the discrimination claims; and that "some of the witnesses, may be hard to locate if they may have moved, left their jobs at Fox Glass, or, as in the case of [Richard], died." [Dkt. 110] at 19-22.

Although "generally, courts have not found undue prejudice," where, as here, "a party moves to amend while discovery is still open," *Hagans v. Nat'l Mentor Healthcare, Inc.*, Civ. No. 22-128 (SAK), 2024 WL 3024892, at *4 (D.N.J. June 17, 2024) (collecting cases), the fact that discovery remains open is not, in itself, determinative. *See, e.g., Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 218-19 (E.D. Pa. 2017) (denying motion for leave to amend filed "over two years after filing the complaint, and about a month before the scheduled conclusion of discovery"); *Atl. Holdings Ltd. v. Apollo Metals, Ltd.*, Civ. No. 16-6247, 2018 WL 5816906, at *2, 4-6 (E.D. Pa. Nov. 7, 2018) (denying motion to amend filed days

before the deadline to seek leave to amend pleadings and roughly one month before the close of the second phase of fact discovery).

Here, the parties largely completed written discovery on March 31, 2025.[7] [Dkt. 74] at 1. If the Court were to permit Manutti to add the proposed new claims at this point, the parties would need to engage in another comprehensive round of written discovery to address the new claims and factual allegations made in Manutti's proposed amended complaint aimed at completely different legal theories than those identified in the original complaint. Additionally, defendants indicate that they "would need time to prepare an [a]nswer or motion to dismiss, add new defenses, and, potentially add additional claims in response" to the proposed amendments. [Dkt, 110] at 21. This would result in a substantial delay to the ultimate resolution of this case, which is already several years old, and unreasonably increase costs for defendants.[8]

---

7 The parties conducted limited, supplemental discovery regarding defendants' amended counterclaims. Because the amended counterclaims largely relate to the existing claims and body of facts already at issue in this case, however, this was not a significant undertaking. Moreover, many (if not all) of defendants' amendments were based on recent developments or additional facts that came to light through the discovery process.

8 *See, e.g.*, *Pub. Serv. Elec. & Gas Co. v. Newport Assocs. Dev. Co.,* Civ. No. 16-8445 (KM), 2021 WL 2374389, at *4-5 (D.N.J. June 9, 2021) (denying motion for leave to amend pleadings on grounds of undue delay, bad faith, and undue prejudice where party waited "over a year after the close of document discovery to plead [ ] additional allegations."); *Atl. Holdings*, 2018 WL 5816906, at *6 (denying motion to amend because, *inter alia*, "[g]ranting th[e] motion would result in the re-opening of discovery and substantial delay to accommodate [ ] proposed new defendants and claims of fraud . . . [that] would drastically change the existing legal and factual matters in dispute."); *Heraeus Med.*, 321 F.R.D. at 218 (denying motion to amend

Complicating things further, because Richard has died and will not be available for any deposition or cross examination or to assist with discovery responses, "the prejudice would be particularly unfair." *Bradley*, 2018 WL 1087498, at *6 (denying plaintiffs' motion to amend complaint to add new defendants and new claims because the plaintiff himself "died and w[ould] not be available for any further deposition or cross examination."). On this point, Manutti argues that "any potential prejudice from Richard's unavailability is incidental and limited and affects all parties equally"; that "the unfortunate passing of a party does not legally extinguish [p]laintiff's right to amend where the claims are otherwise properly asserted"; and that "[t]he new claims are based on documentary evidence and other witnesses who remain available to testify," so defendants "retain a meaningful ability to test the allegations through discovery." [Dkt. 105-1] at 12; [Dkt. 111] at 7. On balance, the Court is not persuaded by these arguments.

First, the Court does not agree that the death of Richard will affect "all parties equally." [Dkt. 105-1] at 12. Much of the discrimination (and retaliation)

---

where, among other things, "[a]mendment of the complaint would necessitate a new wave of motion practice" in a case already plagued with extensive discovery-related motion practice, "[g]ranting leave to amend would . . . significantly delay[ ] resolution of a case that ha[d] been pending for several years and required [domestic and foreign] discovery . . . which would have to be repeated to some degree if [a new party] were added," and the role of the proposed new party was "known all along."); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, Civ. No. 15-6480, 2020 WL 4001051, at *3-4 (E.D. Pa. July 15, 2020) (denying motion to amend filed on the eve of the close of fact discovery because "the timing" of the request to amend "would prejudice [d]efendants through additional discovery and delay that would not have occurred had [p]laintiffs moved earlier.").

alleged in the proposed amended complaint came from Richard directly. *See, e.g.,* [Dkt. 105-1] at ¶¶ 96-99, 103, 106. Of course, Manutti is alive, and is free to provide his version of events through discovery responses and testimony. Richard, on the other hand, is no longer available to rebut Manutti's account or to otherwise express his own side of the story. And, in addition to providing evidence on the claims asserted against him directly, Richard also is a key witness to the extent the new claims are asserted against Tina and Fox Glass FL. Indeed, Manutti submits that Tina's liability stems from her alleged control over and impersonation of Richard, and that all of the alleged discrimination giving rise to employer liability stem from Richard's and Tina's actions. [Dkt. 111] at 12-13. The Court thus agrees with defendants that Richard "is at the 'heart' of the [proposed new] claims," and that his absence is highly prejudicial to their defense against those claims. [Dkt. 110] at 17-19 (quoting *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 134 (3d Cir. 2019)).

Second, Manutti is correct that the death of a party does not legally extinguish his right to seek leave to amend, but the Court still must consider his delay, and whether Richard's death would unduly prejudice defendants is relevant to determining whether to grant leave to amend in light of that delay. *Cureton*, 252 F.3d at 273 (the Court must "focus on the hardship to the [non-moving party] if the amendment were permitted."); *Fugah v. State Farm Fire & Cas. Co.*, Civ. No. 14-6908, 2016 WL 1383702, at *2 (E.D. Pa. Apr. 7, 2016) (prejudice becomes "undue" when the nonmoving party shows "that it was either unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it

would have offered had the amendment been timely, or that its ability to present its case would be seriously impaired.”). As just discussed, defendants would be significantly prejudiced by Richard’s unavailability, and, again, these claims could have been asserted far earlier on in the litigation, which would have prevented or alleviated at least some of the prejudice defendants would now suffer if the Court permitted the amendments at this juncture.[9]

Finally, the Court does not agree with Manutti’s argument that the availability of other witnesses mitigates the prejudice resulting from Richard’s death. As discussed briefly above, many of the allegations alleged in support of the proposed new claims concern or turn on statements that Richard himself made. “To not allow the defendant[s] an opportunity for additional discovery on the new claims would be unduly prejudicial . . . since the information c[an] not be discovered from another source.” *Freiberg v. Sentry Ins. Co.*, Civ. No. 88-3104, 1989 WL 101329, at *1 (E.D. Pa. Sept. 1, 1989) (collecting cases). All things considered, the Court concludes that defendants would be unduly prejudiced if the Court permitted Manutti’s proposed new claims to proceed at this stage of the case.

---

9 Obviously, Richard is also unavailable to testify regarding the existing claims at issue in this action and he would have been a key witness for those claims, too. However, defense counsel at least had a chance to confer with Richard before his passing in order to shape their defense strategy and to provide discovery responses as to those claims. The same is not true for Manutti’s proposed new claims, which vastly expand the scope of the case into territory not previously in issue or otherwise explored by the parties in discovery. Allowing Manutti to pursue these additional claims would exacerbate the existing complications arising from Richard’s death.

*

In sum, the Court appreciates that fact discovery is still open and that new counsel identified potential additional claims, and therefore has an interest in pleading Manutti's best case before proceeding further in this action. But the Court cannot ignore (1) that the facts giving rise to the proposed new claims have been known or readily available to Manutti since the outset of this litigation; (2) that the case progressed significantly between the events giving rise to the proposed additional claims and when Manutti sought leave to amend; (3) that the new claims would substantially expand the scope of this litigation and discovery; and (4) Richard's death in the interim results in the unavailability of key evidence concerning the proposed new claims. The Court thus concludes that permitting Manutti to proceed with his proposed new claims would delay the resolution of the action, place an unwarranted burden on the Court, and unduly prejudice defendants. Accordingly, the Court denies Manutti's motion for leave to amend to the extent that it seeks to add new claims for discrimination, retaliation, and wrongful termination.

## IV. CONCLUSION

For the reasons stated, and for good cause shown,

IT IS on this 9th day of October, 2026, hereby

**ORDERED** that Manutti's motion for leave to amend [Dkt. 105] is DENIED to the extent that it seeks to add new claims for discrimination, retaliation, and wrongful termination; and it is further

**ORDERED** that Manutti's motion for leave to amend is otherwise GRANTED; and it is further

**ORDERED** that no later than **October 23, 2026**, Manutti shall file an amended complaint consistent with this Order; and it is further

**ORDERED** that no later than **October 23, 2026**, Manutti shall file a responsive pleading to defendants' amended counterclaims.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE